**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 21-cr-20582-RNS**

UNITED STATES OF AMERICA,

Plaintiff,

v.

BAYRON JOSE TUREZ MALIANO,

Defendant.

_____/

## DEFENDANT BAYRON JOSE TUREZ MALIANO, SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE

COMES NOW the Defendant, BAYRON JOSE TUREZ MALIANO, by and through his undersigned counsel, and presents this Sentencing Memorandum in support of his Request for Downward Variance pursuant to Title 18 U.S.C. §3553(a) Factors.

## INTRODUCTION

Mr. Turez is deeply remorseful for his criminal conduct and recognizes that the offense he has committed is a serious one. His actions have had a profound impact on the United States, this Court, and his own family. Mr. Turez acknowledges his responsibility, and the following Memorandum is submitted for the Court's consideration in determining his sentence. Through this sentencing memorandum, we are also respectfully requesting a significant downward variance of 33 months from 57 months, which is the bottom of the guideline range; resulting in a sentence of two (2) years, or 24 months imprisonment. Based upon various factors supporting a downward variance, we believe that the Court can fashion a sentence lower than the guidelines that is "sufficient but not greater than necessary" to achieve the goals of sentencing under 18 U.S.C. §3553(a).

## UNITED STATES V. BOOKER

In *Booke*r, the Supreme Court held that the Sentencing Guidelines are no longer mandatory and constitute only one of the sentencing factors that the Court must consider under §18 U.S.C. 3553(a). *United States v. Booker*, 125 S. Ct. 738, 757 (2005). Under Booker, sentencing decisions are subject to a "reasonableness" standard of review, which must be measured against the factors outlined in 18 U.S.C. §3553(a)1. Id at 761. A sentence outside the advisory guideline range does not need to be justified by "extraordinary circumstances". *Gall v. United States*, 128 S. Ct. 586 (2007). In fact, the Supreme Court has specifically rejected any presumption of unreasonableness for sentences outside the guideline. Id at 595. The sentence imposed must be "sufficient but not greater than necessary" to achieve the purposes. *United States v. Williams*, 435 F. 3d 1350 (11th Cir. 2006)(90 months' imprisonment was sufficient, but not greater than necessary to punish, deter, and rehabilitate defendant even though low end of guidelines was 188 months; a 98-month variance).

## ANALYSIS OF 18 U.S.C. 3553(A) FACTORS

1. **Nature and circumstances of the offense.**

The offense charges that Mr. Turez, along with three co-Defendants and "other persons unknown", with one (1) conspiracy count and one (1) substantive count of possession with intent to distribute 1,000 kilograms or more of a mixture and substance containing a detectible amount of marijuana while on board a vessel subject to the jurisdiction of the United States. Specifically, Mr. Turez and his co-defendants are held accountable for 1,587 kilograms of marijuana. Mr. Turez accepted responsibility for his conduct in a timely manner and plead guilty to the indictment. [D.E. 24]. As a result, the Pre-Sentence Report (PSR) properly awards a three-level reduction pursuant to U.S.S.G. §3E1.1(a)-(b). [D.E. 44].

Because of his timely acceptance of responsibility and proffer of his involvement, Mr. Turez also qualifies for a minimum mandatory waiver under the 'safety valve' pursuant to §5C1.2(a); and an additional two-level reduction pursuant to U.S.S.G. §2D1.1(b)(18). Id.

With regards to his particular involvement, Mr. Turez was merely a conduit; he was recruited in Costa Rica to transport marijuana from Colombia north and perform tasks that were commanded of him. He neither owned nor commissioned the vessel or the vessel's cargo, nor did he have any decision-making power over it. He was not the master of the vessel, nor did he exert any authority over the other sailors aboard. Mr. Turez had no idea how much drugs were being carried on the boat that day nor did he know the type of drugs, nor did he intend for the drugs to enter the United States.

**2. The history and characteristics of the defendant.**

Bayron Jose Turez Maliano, also known as Bayron Jose Torres Maliano (40 years old) was born in Chinandega, Nicaragua. Although growing up in a loving home, Mr. Turez lived with his mom and father until the age of 10 when they were divorced and continued to live with just his mother. As a single mother she struggled financially. As a result, she was only able to provide the bare minimum to Mr. Turez and at the age of 10 Mr. Turez left school in the 3rd grade to stay home and help his mother with the farm.  During childhood and his adult life, Mr. Turez lived in a wooden house without running water or electricity.

After his parents' separation, Mr. Turez rarely saw his father and ended up not having any sort of relationship with him growing up and now in his adult life. Today, his father is still a tenant farmer, but his mother can no longer farm due to health problems. This has caused her to depend on her kids for survival, including Mr. Turez. His mother is so sick that Mr. Turez refuses to inform his mother of his current situation to not worsen her condition.

When Mr. Turez is at home he lives with his girlfriend, Maria Fernanda Peralta Castro with whom they share a home in Costa Rica. Ms. Peralta Castro has two children of her own with whom Mr. Turez assists her financially. Apart from this relationship, Mr. Turez has biological children who he must provide for. Mr. Turez has stated that while his current girlfriend is aware and supports him through this situation, she cannot assure she will be waiting for him to be released from incarceration because she needs financial help to raise her children which Mr. Turez cannot provide for. Upon his release, Mr. Turez has stated he will return to his home to continue assisting his mother and children who are in need of him.

**Employment History**

Mr. Turez has essentially always been a day laborer. From 2011 to 2015 the Defendant reportedly worked as a Welder's Assistant  where he earned an estimated $150 monthly. He was later given a promotion to Welder which he worked from 2015 to 2018 and he was making an estimated $300 monthly. For these 7 years he was working in his home countryside until he moved to Punta Reyna, Costa Rica where he continued to work as a Welder making an estimated $300 monthly until 2021. Whether he was working on his family's farm since the age of 10 or Welding, Mr. Turez has always worked to provide the best he can to his family.

**Lack of Criminal History**

Mr. Turez has never been in trouble with the law. While, Mr. Turez in no way excuses his decision to engage in criminal conduct himself, like many others, Mr. Turez succumbed to the false promises of financial independence and a new, safer life, for him and his family. His motive for entering into this conspiracy was not one of greed or malice. Mr. Turez is not in the business of engaging in criminal conduct and the 11th Circuit has held that lack of criminal history is an appropriate consideration in the court's Booker analysis. *United States*

*v. Monetti*, 705 Fed. Appx. 865 (11th Cir. 2017)(a lack of defendant's criminal record is an appropriate consideration for the court in its §3553(a) analysis).

**Remorse**

Mr. Turez is genuinely remorseful and upset with his stupid choice; he has never been in trouble with the law and does not want to find himself in this position again. Mr. Turez provided a brief written statement expressing his remorse to USPO Andres McDougan and warranting him a reduction pursuant to §3E1.1(a)-(b). [D.E. 44]. Further, he has met the safety valve criterion of §5C1.2(a), excluding him from any minimum mandatory sentence and warranting a reduction pursuant to §2D1.1(b)(18). Id. The 11th Circuit has further held that genuine remorse is another important and appropriate factor to be considered in the court's §3553(a) analysis. See *United States v. Gomez-Martinez*, 569 Fed. Appx. 777 (11th Cir. 2014) (recognizing that an offender's statement of remorse is directly related to both 'the nature and circumstances of the offense' and 'the history and characteristics of the defendant'), See also *United States v. Robinson*, 741 F.3d 588 (5th Cir. 2014)(a court has the power to consider certain other factors concerning the defendant's remorse under §3553(a) irrespective, of whether the Government files a §5K1.1 motion). Mr. Turez intends on making a statement to this Honorable Court at the time of sentencing further expressing his remorse.

3. **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Although a serious offense, the instant offense is a non-violent one; its guidelines are determined largely by the weight of the marijuana aboard the ship many times of which mules such as Mr. Turez remain unaware of the substance's exact weight. Mr. Turez has not made a living off of committing crimes and had stable and lawful employment prior to his arrest. Mr. Turez had no intention of bringing the marijuana into the U.S. and was unaware of where the cargo would ultimately end up; he only knew that the vessel's destination was Costa Rica. Costa Rica is geographically located due south of Nicaragua. This is Mr. Turez' first time being incarcerated and, even if the Court grants his variance motion, he will spend a significant amount of time incarcerated in a different country, away from his family; this is the ultimate deterrence since the main reason he involved himself in this act was to better provide for his family. Thus, a sentence below the guidelines would be sufficient, but not greater than necessary, to punish Mr. Turez, deter future criminal conduct, and protect the community.

**Low Risk of Recidivating**

A lengthier imprisonment term is not necessary to protect society from Mr. Turez, given that his risk of recidivism is very low. The Sentencing Commission's report on "Measuring Recidivism" demonstrated that: those who are married are less likely to recidivate than those who were not; those who have not used illicit drugs are less likely to recidivate than those who did; non-violent offenders are less likely to recidivate than violent offenders; first time offenders are less likely to recidivate than repeat offenders; those who are employed are less likely to recidivate than those who are not employed; and those who are sentenced to non- jail sentences are less likely to recidivate than those who receive straight jail. See U.S.S.C., "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines", (2004). Furthermore, Commission studies show that

minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism. See U.S.S.C., "A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score", at 15 (2005).

Mr. Turez' personal history and characteristics indicate that he has an extremely low risk of recidivating. Mr. Turez is a caring son and a father of three; he also has an extended family whom he has the support of. [D.E. 44]. It is clear that Mr. Turez is a dedicated family man. Mr. Turez is not a violent offender nor a repeat offender – this is his only time being in trouble with the law. Mr. Turez was employed and made a manageable living as Welder. Mr. Turez has legitimate decreased risk of recidivating and a longer sentence would be greater than necessary. See *United States v. Adelson*, 441 F. Supp. 2d 506, 515 (SDNY 2006)(Long prison sentences are not always necessary to achieve the retributive and general deterrence objectives.)

4. **The kinds of sentences available and the kinds of sentence and the sentencing range established and pertinent Sentencing Commission policy statement.**

Title 18 U.S.C. 3553(a) expressly dictates that "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth." The PSR finds that Mr. Mosquera's total offense level is a 25 with a criminal history category of I, resulting in a guideline range of 57-71 months. Mr. Turez has met the safety valve criterion of §5C1.2(a), and is this Court is not bound to any mandatory minimum sentence. [D.E 61]. Mr. Turez has no criminal history; thus, his criminal history category is I. However, undersigned counsel submits that even 57 months imprisonment is a term that is greater than necessary to achieve the goals of sentencing under §3553(a); there are many factors that

support a 33-month downward variance from the bottom of the guideline range, resulting in a 24-month sentence for Mr. Turez' criminal conduct.

**5. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Mr. Turez has been imprisoned at FDC during the COVID-19 pandemic; he has not been able to enjoy the standard freedoms even FDC provides because of the pandemic, and restrictions come and go without any predictability. Thus, Mr. Turez incarcerated sentence will be disparate from those who enjoyed standard pre-pandemic freedoms, such as more social time with other inmates, classes, and vocational training, etc. Further, once Mr. Turez serves his sentence, he will be transferred into the custody of immigration where he will spend additional time awaiting deportation to Nicaragua, essentially extending the time he will spend incarcerated beyond this prison sentence.

## CONCLUSION

Even a term of 57 months imprisonment is greater than necessary to achieve the goals of sentencing under 18 U.S.C. 3553(a), and, for based on all the factors discussed in this memorandum, a 33-month downward variance from the bottom of the guideline range is warranted which would result in a two (2) year or 24-month prison sentence.

WHEREFORE, it is respectfully requested that this Honorable Court find that the foregoing provides a well-founded basis upon which to grant a variance from the advisory guidelines and sentence Mr. Turez to a term of imprisonment below the advisory guidelines.

Respectfully submitted,

_/s/ EMMANUEL PEREZ__
Emmanuel Perez

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/EFC which sent e-mail notification of such filing to all CM/EFC participants in this case on this 10TH day of May 2022.

Emmanuel Perez & Associates, P.A.
901 Ponce De Leon Boulevard, Suite 101
Coral Gables, Florida 33134
Tel: (305) 442-7443
Email: courtmail@lawperez.com

By:     /s/ EMMANUEL PEREZ
         Emmanuel Perez
         F.B.N. 586552