**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.: 21-CR-20582-RNS**

**UNITED STATES OF AMERICA**
    **Plaintiff,**

**vs.**

**HEBOR WATERS,**
    **Defendant.**

_____/

## SENTENCING MEMORANDUM AND
## MOTION FOR DOWNWARD VARIANCE

Hebor Waters, through undersigned counsel, respectfully files this sentencing memorandum and motion for downward variance in advance of his sentencing hearing. The Presentence Investigation Report ("PSI") correctly calculates the advisory guideline range as 57 to 71 months. Based on specific factors from 18 U.S.C. § 3553(a), Mr. Waters moves for a downward variance from the guidelines and respectfully recommends a sentence of 30 months imprisonment.

### Relevant Facts and Procedural Posture

On March 28, 2022, Mr. Waters pled guilty to one count of conspiracy to possess with intent to distribute one thousand kilograms or more of marijuana while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b). (DE 39, 41).

The charges stem from Mr. Waters' agreement to transport a vessel full of marijuana between countries in South America. A drug trafficker in Nicaragua, identified by his nickname by Mr. Waters to the government, recruited Mr. Waters

to assist with the transportation. The recruiter did not give any specific information to Mr. Waters about their journey. Mr. Waters learned that the trip would take approximately four days to get from Nicaragua to Colombia; and about four days to get back. The recruiter did not give specific information or instructions about what would happen when the vessel landed in Colombia. The recruiter told Mr. Waters that once the vessel was moving with the drugs on board, the recruiter would give $10,000 to Mr. Waters' wife. No money was ever received.

Mr. Waters arrived as instructed to a boat filled with food and other necessity items. When Mr. Waters arrived in Colombia, unknown drug traffickers escorted him to an empty room in a house, where he waited for a few weeks, never leaving the room. A few weeks later, Mr. Waters and the other transporters were taken back to a larger boat by the same Colombian drug traffickers. The boat was already loaded with food, necessities, and the marijuana. They were given instructions to get the drugs back to Nicaragua.

On November 13, 2021, the United States Coast Guard intercepted the boat 97 nautical miles off the coast of Costa Rica. Law enforcement recovered 1,587 kilograms of marijuana. Mr. Waters was arrested and was cooperative with law enforcement.

Mr. Waters made his initial appearance in the Southern District of Florida on November 23, 2021. (DE 3). He stipulated to a $250,000 corporate surety bond with a *Nebbia* condition. He remains incarcerated at the Federal Detention Center in Miami.

2

**The § 3553(a) Factors and Motion for Downward Variance**

A sentence of 30 months is sufficient but not greater than necessary after consideration of the history and characteristics of Mr. Waters, the need to afford adequate deterrence to criminal conduct and protect the public from future crimes, and the need to avoid unwarranted sentencing disparities.

<u>The History and Characteristics of Mr. Waters</u>

Mr. Waters takes full responsibility for his actions in this case. However, the history and characteristics of Mr. Waters help to put his conduct into context and explain why a sentence of 30 months is sufficient but not greater than necessary.

Mr. Waters' father and stepmother raised him in very poor conditions in Nicaragua. While they did their best to provide basic needs, Mr. Waters began working at 13 years old to assist his family financially. He did not finish school past the 7th grade.

Mr. Waters' decision to take part in this crime was the result of financial desperation. More specifically, both of his children have significant medical issues that require treatment that Mr. Waters cannot afford. His daughter, Lady Waters Hamilton, has an umbilical hernia. Surgery was planned to fix the hernia in 2021; however, the surgery was canceled when the family informed the hospital that they could not pay for the treatment. Mr. Waters' other daughter, Kirani Rene Waters Barboza, has recurring and persistent eye infections that require treatment. Similarly, Mr. Waters and his family were unable to provide the medically necessary treatment for Kirani. While these situations do not justify Mr. Waters' actions, it was

out of desperation to help his children that he committed this crime. The relatively small amount of money that he was promised was enough to ensure that his daughters could get the medical treatment that they needed. And although Mr. Waters very much recognizes the devastating decision that he made when he chose to participate in the trip, at the time, his focus was solely on helping his children and their medical needs.

<u>The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes</u>

While Mr. Waters does not seek to minimize his own conduct, his role in this offense supports the contention that a sentence of 30 months would be sufficient but not greater than necessary to afford adequate deterrence of criminal conduct and protect the public from further crimes.

Mr. Waters was one of four men recruited by people who played a much larger role in this drug trafficking organization. Mr. Waters had no experience with drug sales or trafficking; but his extreme financial hardships made him a prime target for recruitment. Mr. Waters had no decision-making power; he did as he was instructed in hopes that he could provide a relatively small amount of money to his family for their medical needs.

While Mr. Waters' motivation to commit this crime was financial desperation and the need to help his daughters obtain medical treatment, he recognizes that his actions caused more harm than they did good. Mr. Waters recognizes that his incarceration leaves his daughters without a father and without his legally obtained income – a consequence that will punish his family during the course of his sentence.

4

In hindsight, had Mr. Waters taken into account the full potential consequences of his actions, he might have thought better. But now, knowing the harm that he has caused his family, and the difficulties that he has put them through, is enough deterrence to ensure that Mr. Waters will never be in a similar situation again.

<u>The Need to Avoid Unwarranted Sentencing Disparities</u>

The Court granted motions filed by Mr. Waters' co-defendants for downward variances and sentenced each to 36 months of imprisonment. (DE 63, 64, 65). Mr. Waters agrees that there was not evidence that he was more or less culpable than his co-defendants. However, Mr. Waters maintains that a sentence of 30 months is appropriate because of the exigency of the circumstances surrounding his daughters' medical conditions; and because of the information that he provided to the government.

As described above, Mr. Waters' financial hardship grew unmanageable. Although Mr. Waters was used to being poor, he never engaged in illegal behavior before the current offense. He was a law-abiding man who earned $60 per day fishing. All of his money went to provide for his family. However, the medical bills began to pile on, and when Lady's surgery was canceled, Mr. Waters became desperate. While Mr. Waters does not seek to use this as an excuse for his conduct, the urgent medical situation made his behavior in this case a true aberration from his typical conduct.

Additionally, Mr. Waters provided the government with information beyond what is required for a safety valve statement. Mr. Waters was able to provide the location where he was recruited, along with a description and nickname of the

recruiter. Mr. Waters was able to provide information about when others were recruited, including details of those conversations. Mr. Waters described the roles of others on the boat and gave information about when each participant was recruited. Although the recruiters and the traffickers went to great lengths to protect their own identities, Mr. Waters provided as much information as possible to the government.

Based on the foregoing information, when considered alongside the 18 U.S.C. § 3553(a), Mr. Waters respectfully recommends a sentence of 30 months.

**Respectfully,**

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:     */s/ Lauren Field Krasnoff*
        Assistant Federal Public Defender
        Florida Bar No.: 86951
        150 W. Flagler Street, Suite 1700
        Miami, Florida 33130-1556
        Tel: (305) 533-4255
        Fax: (305) 536-4559
        E-mail: lauren_krasnoff@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on June 6, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ **Lauren Field Krasnoff***

7